Eric H. Gibbs (SBN 178658)
Dylan Hughes (SBN 209113)
Steve Lopez (SBN 300540)
**GIBBS LAW GROUP LLP**
One Kaiser Plaza, Suite 1125
Oakland, California 94612
Telephone:   (510) 350-9700
Facsimile:   (510) 350-9701
ehg@classlawgroup.com
dsh@classlawgroup.com
sal@classlawgroup.com

*Attorneys for Plaintiff*

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER KORNFEIN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HONDA MOTOR COMPANY, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Roger Kornfein, on behalf of himself and all others similarly situated, alleges as follows:

## NATURE OF CASE

1.     This proposed class action alleges that Honda concealed a transmission defect in its 2015 Acura TLX i4 vehicles (Class Vehicles) and refuses to repair the defect under warranty.  The defective transmissions cause Class Vehicles to hesitate while shifting gears, shift roughly and noisily, and leaves drivers unable to reliably control their vehicles' speed.  In some instances, the defect causes Class Vehicles' transmissions to act as if they had shifted into neutral, leaving drivers unable to accelerate at all (even when the vehicle is in operation).

2.     Honda knows about the transmission defect, and is aware that consumers are experiencing shifting and hesitation problems.  Nevertheless, Honda has not disclosed the defect to current owners and lessees of Class Vehicles, and instead continues to sell vehicles with defective transmissions and promote the transmissions as reliable and smooth-shifting.

3.     Plaintiff Kornfein brings claims for violations of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, Oregon's Unfair Trade Practices Act, Or. Rev. Stat. § 646.605 *et seq.*, the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, and for breaches of express and implied warranty.

## PARTIES

4.     Plaintiff Roger Kornfein is a citizen and resident of Portland, Oregon, located in Multnomah County.

5.     Defendant American Honda Motor Company, Inc. (Honda) is a corporation organized under the laws of the State of California and headquartered in Torrance, California.  Honda is the U.S. sales, marketing, and distribution subsidiary of its Japanese parent company, Honda Motor Co., Ltd.

CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual proposed class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant Honda, on the other, are citizens of different states.

7.     This Court also has jurisdiction over Honda because it maintains its principal headquarters in California; is registered to conduct business in California; has sufficient minimum contacts in California; or otherwise intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of its vehicles such that the exercise of jurisdiction by this Court is proper and necessary.  Moreover, Honda's wrongful conduct (as described below) emanates from California and foreseeably affects consumers in California.  Most, if not all, of the events complained of below occurred in or emanated from Honda's corporate headquarters in Torrance, California.

8.     Venue is proper in this District under 28 U.S.C. § 1391(a) because Honda resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## SUBSTANTIVE ALLEGATIONS

9.     This lawsuit concerns the 2015 Acura TLX i4.  The TLX is a vehicle line introduced in the 2015 model year that is produced, marketed, distributed, and warranted by Honda under the "Acura" brand name.  The i4 is the four-cylinder version of the Acura TLX.  Honda advertises the TLX as a performance vehicle, and describes it as "designed to deliver a unique and compelling blend of sports-sedan athleticism and premium luxury refinement."

10.     According to Honda, the TLX's powertrain is the "heart" of the vehicle's performance capabilities.  In particular, Honda developed a new transmission for the

2015 TLX i4.  The transmission is an 8-speed dual clutch transmission (sometimes called a DCT) that includes a torque converter.

11.     A dual clutch transmission is a type of automatic transmission that uses separate clutches for the odd and even gear sets.  The primary advantage of a dual clutch over conventional transmissions is that a dual clutch can shift more efficiently and quickly, without interrupting power flow from the engine to the transmission.  Traditionally, the disadvantage of a dual clutch transmission is that it does not shift as smoothly as a conventional automatic transmission.



12.     Honda promises that the TLX transmission provides the best of both worlds—lightning-fast shifting that is also smooth.  For example, Honda states on their website that "[b]ecause dual-clutch transmissions have been known to shift roughly, particularly from a stop (think: novice learning to shift manually), Acura took the unusual step of maintaining a torque converter for a smoother launch."   Likewise, Honda states that the TLX transmission "provides exceptionally smooth operation in stop-and-go

CLASS ACTION COMPLAINT

situations, plus it offers off-the-line torque multiplication for substantially improved initial acceleration that a DCT alone cannot equal."

13.     Honda has also incorporated other technologies to ensure smooth shifting between gears including an engine management system that choreographs the engine and transmission to reduce "shift shock" during upshifts and downshifts.  The TLX  also includes "Smart Transmission Logic" systems, including a Grade Logic Control System, Shift Hold Control, and Cornering G Shift Control, which reduce unwanted shifting and gear hunting.

14.     Despite these systems, the dual clutch transmission in Class Vehicles includes a defect that causes the vehicles to shift roughly and noisily.  Drivers have reported that shifts in the lower gears are very "jerky" and can cause the vehicle to shake when the gear finally kicks in.  The gear can kick in so roughly that it can cause the car to lurch forward suddenly.  Sudden downshifting also causes Class Vehicles' RPMs to suddenly increase, and drivers report feeling as if the vehicle were suddenly accelerating.  The defect can cause Class Vehicles to hesitate while accelerating from a stop, and can also cause hesitation while a Class Vehicle is in the process of making a turn or attempting to pass another vehicle.  In some cases, the defect causes a Class Vehicle's transmission to act as if it had been shifted into neutral while the vehicle is moving, leaving a driver unable to accelerate the vehicle.

15.     Drivers have made complaints about the transmission to the National Highway Traffic Safety Administration (NHTSA) and on online forums.  For example:

> 2015 TLX: This vehicle often hesitates or has a loud noise of the transmission
> sounding like it is trying to shift into a gear it shouldn't.  Both of these occurances
> happen when moving from a stopped position. Car does not move for a couple of
> seconds, in the latter case or is moving away from stopped position in the former
> case.  Every time this happens the vehicle in back of me thinks I am moving

CLASS ACTION COMPLAINT

forward (which is not happening) and procedes to move almost rear-ending me. It is just a matter of time. This happens when the vehicle is cold/ hot.
(NHTSA I.D. 10672293)

2015 TLX:  There is a very rough upshift from second to third, on a long right hand turn when transmission is cold, in the middle of the turn, power to wheels disappears and reappears when road straitens, transmission/car surges forward on down shift 3 to 2 (sometimes).
(NHTSA I.D. 10682405)

2015 TLX:  Issues with transmission action shifting. 1. Delay of acceleration at low speed such as at an intersection (4 occurrences) where making a turn car does not readily accelerate due to being in too high of a gear while in automatic mode. After about 2 seconds, car downshifts and resumes normal acceleration. Has not reoccurred in at least a month. 2. Rough shift (lag) when car upshifts from 2nd to 3rd. This has been present since purchase and occurs regardless of what mode (auto/manual) is selected. Has not improved. 3.within last 30 days, vehicle is not downshifting correctly when coming to a stop. Car does not actually downshift into 1st until after it is at a complete stop resulting in a lurch. No matter how smoothly the car is brought to a stop, the final downshift in auto mode doesn't occur until after reaching a stop. The problem does not start to happen until engine/car is warm as the first few complete stops when cold are 100% ok, then after warmed up it will occur every time thereafter. 4. When engaging drive or reverse, the vehicle will begin to accelerate slightly without pedal input such as when backing out of a parking space. Contacted dealer and dealer said no instructions from maker or TSB's yet and that transmission was new model and maker not sure what to expect. Told dealer I would drive the car for a few more weeks to see if situation improves. Did not take car in for check based on dealer comment that there was no

instruction from Acura yet for a fix. Vehicle is now 3500 miles and issues 2, 3, 4 still occurring.

(NHTSA I.D. 10682399)

2015 TLX:  When accelerating from a stop when the transmission is cold, there is a lag time from the time the accelerator is pressed to the time the car moves, and when the car moves,it lurches through the first few gears. Can be dangerous if not totally paying attention. Also, when approaching a stop, as the electronic transmission downshifts to the lower gears, the car also can lurch when getting to the first gear. When backing up and going from R to D, there is a 2 to 3 second lag until the car goes into D mode. When backing out of driveways, give yourself plenty of time! I have had the car in 4 times for "software updates", but it does not address any of these issues.

(NHTSA I.D. 10683640)

2015 TLX:  This problem is the third different problem I have had on this brand-new car.  The most common one I have had is pressing the gas pedal from a stopped position and the car does nothing.  No movement, no engine revving. After a couple of seconds it goes.  I have also had the transmission make a loud sound when slowly leaving a stopped position, then a violent jerk.  This new problem is like the first, only it revs but still goes nowhere.  Acura is supposedly looking into it.  I had problems the next day (Thanksgiving) after I bought it. (http://www.carcomplaints.com/Acura/TLX/2015/transmission/when_gas_pedal_pressed_car_doesnt_move.shtml)

2015 TLX: The car has a had a hard or delayed shift from reverse to drive when cold from the time I bought the car, but last week the car slipped/shifted out of gear like it was in neutral when I accelerated from a stop to go through an intersection.

CLASS ACTION COMPLAINT

The car was in economy mode at the time. Acura did an update on the transmission for hesitating and lurching around January 15, 2015. The car is at the the dealership now.

(NHTSA I.D. 10683775)

16.     Honda has long known that the 2015 Acura TLX i4 has a transmission defect.  Honda is well aware of the history of problems with dual clutch transmissions, as its own advertisements state that that "dual-clutch transmissions have been known to shift roughly" and compare dual clutch transmissions to a "novice learning to shift manually." Honda is also familiar with other auto manufacturers' problems with dual clutch transmissions.  Chrysler introduced a dual clutch into some of its vehicles, but has since reduced the number of models in which it is an available option because of consumer complaints concerning rough shifting and hesitation issues.  Ford has also faced complaints and has acknowledged that the implementation of dual clutches has been "challenging." Honda also has exclusive access to information about the transmission defect through its dealerships, pre-release testing data, warranty data, customer complaint data, replacement part data, and other sources of aggregate information about the problem.  In contrast, the transmission defect was not known or reasonably discoverable by Plaintiff and potential class members before purchase, and without experiencing the defect first hand.

17.     Honda has actively concealed the transmission defect from consumers. Even when vehicle owners specifically ask whether their vehicle suffers from a known problem, Honda's corporate office declines to admit the existence of a problem.  Honda dealerships often tell drivers that they are unable to replicate symptoms of the issue and will decline to perform further diagnostic or repair.

18.     Honda provides all TLX owners and lessees with a New Vehicle Limited Warranty.  The New Vehicle Warranty states that Honda will repair or replace any part that is defective in material or workmanship under normal use for the first 4 years or

50,000 miles, whichever comes first.   Yet despite this warranty, Honda refuses to acknowledge or fix the defect at no cost to consumers.

19.     As a result of Honda's practices, Plaintiff and the proposed class members purchased vehicles they otherwise would not have purchased, paid more for those vehicles than they would have paid, and are subjected to an unreasonable risk to their safety.

## PLAINTIFF'S EXPERIENCE

20.     In September 2015, Roger Kornfein purchased a new 2015 Acura TLX i4 from the Ron Tonkin Acura dealership in Portland Oregon.   Neither Honda nor the dealership told Mr. Kornfein that the Acura TLX's transmission was defective at the point of sale or otherwise.

21.     About two weeks after his purchase, Mr. Kornfein was making a turn through an intersection when the vehicle's transmission acted as if it had been shifted into neutral: the engine revved but no power was delivered to the wheels and the TLX was unable to accelerate through the turn.   Had there been oncoming traffic, this could have easily led to a collision.

22.     Since this first incident, the transmission in Mr. Kornfein's vehicle suffers from shifting and hesitation problems on a daily basis.   It often takes from one to two seconds for Mr. Kornfein's TLX to shift between gears and pressing the accelerator before this causes the engine to simply rev as if it were in neutral.

23.     When decelerating below twenty miles per hour, the transmission intermittently downshifts very suddenly.   The vehicle also often seems to ride in an inappropriately high gear for its speed.   When accelerating at low speeds or from a stop, the vehicle often takes one or two seconds to shift into gear, and there is a "grab" that causes the vehicle to feel as though it is jerking forward.   When shifting between Park, Drive, and Reverse, it always takes two to three seconds for the transmission to shift after the stick has been moved.   Most alarmingly, Mr. Kornfein's vehicle continues to

experience the issue where his vehicle's transmission acts as if it had slipped into neutral, which occurs at least once a week.

24.     After experiencing these problems, Mr. Kornfein contacted Acura Client Relations by phone and email.  The representatives he communicated with instructed him to take the vehicle to the dealership.  Mr. Kornfein took the vehicle back to Ron Tonkin Acura, but the Acura technicians could not replicate the issue where the vehicle acted as if it had slipped into neutral.  Although the technicians could replicate the vehicle's other issues, they were unable to pull any error codes and declined to perform further diagnostic or repair.

25.     Upon further visits, dealership staff acknowledged that they had heard from other TLX owners with the same problem and that there does appear to be a problem with the transmission (as measured by customer feedback).  Mr. Kornfein has followed up with Acura Client Relations, but Honda's corporate representatives refuse to admit that there is a problem and say that there is no further information available on the matter.

26.     Mr. Kornfein sent a pre-litigation notice to Honda, which Honda received on January 22, 2015.  Mr. Kornfein asked that Honda notify all current and former owners and lessees of Class Vehicles about the defect and pledge to repair the defect at no cost to TLX drivers.

27.     On February 11, 2015, Honda responded with a letter.  Despite Mr. Kornfein's repeated communications with Acura Client Relations and his local dealership regarding the transmission defect, Honda stated that the dealership had identified and addressed Mr. Kornfein's complaints and that there were no reported outstanding issues at this time.

28.     Mr. Kornfein is frustrated with Honda's conduct and lack of transparency in addressing the transmission defect.  He is concerned about the safety and reliability of the transmission system in his and others' TLX vehicles.  Mr. Kornfein does his best to adapt his driving in such a way so that he can avoid confronting the transmission's shifting problems to the extent that he can.  He is unwilling to make decisive moves with the

CLASS ACTION COMPLAINT

vehicle that rely on a fast and consistent response, such as making turns against oncoming traffic, because he fears that the vehicle will not respond quickly and cause an accident.  Mr. Kornfein finds that he must constantly guess what type of hesitation he will experience, because he cannot trust that the vehicle with give him a smooth and fast response.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action on behalf of himself and a proposed nationwide class of persons initially defined as:

*All persons who purchased or leased a 2015 Acura TLX i4 in the United States.*

30.     In the alternative, Plaintiff Kornfein proposes to represent an Oregon Class, initially defined as:

*All persons who purchased or leased a 2015 Acura TLX i4 in Oregon.*

31.     Excluded from the class are Honda and Honda Motor Co., Ltd.; any affiliate, parent, or subsidiary of Honda or Honda Motor Co., Ltd.; any entity in which Honda or Honda Motor Co., Ltd. has a controlling interest; any officer, director, or employee of Honda or Honda Motor Co., Ltd.; any successor or assign of Honda or Honda Motor Co., Ltd.; anyone employed by counsel for Plaintiff in this action; any Judge to whom this case is assigned as well as his or her immediate family and staff; and anyone who purchased a Class Vehicle for the purpose of resale.

32.     This action has been brought and may properly be maintained on behalf of the classes proposed above under the criteria of Federal Rule of Civil Procedure Rule 23.

33.     <u>Numerosity</u>.  Honda has sold thousands of Class Vehicles.  Members of the proposed classes likely number in the tens of thousands and are thus too numerous practically join in a single action.  Class members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

34.     <u>Existence and predominance of common questions</u>.  Common questions of law and fact exist as to all members of the proposed class and predominate over questions

CLASS ACTION COMPLAINT

affecting only individual class members.  These common questions include whether:

    a.    Class Vehicles were factory equipped with defective transmissions;

    b.    Honda knew or should have known about the transmission defect and, if so, when Honda discovered the defect;

    c.    The existence of the transmission defect would be important to a reasonable person, for example, because they pose an unreasonable safety risk, make driving difficult and/or will prematurely fail;

    d.    Honda disclosed the transmission defect to potential customers; and

    e.    Honda dealerships have failed to provide free warranty repairs for Class Vehicles still within the applicable warranty period.

35.    <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the proposed class. Plaintiff and the class members he proposes to represent purchased or leased a Class Vehicle that contains a transmission with the same defect, giving rise to substantially the same state and federal claims.

36.    <u>Adequacy</u>.  Plaintiff is an adequate representative of the proposed class because his interests do not conflict with the interests of the members of the class he seeks to represent.  Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.  The interests of members of the class will be fairly and adequately protected by Plaintiff and his counsel.

37.    <u>Superiority</u>.  The class action is superior to other available means for the fair and efficient adjudication of this dispute.  The injury suffered by each potential class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Honda economically feasible.  Even if class members themselves could afford such individualized litigation, the court system could not.  In addition to the burden and expense of managing many actions arising from the transmission defect, individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all

parties and the court system presented by the legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

38.    In the alternative, the proposed classes may be certified because:

a.    the prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual class members which would establish incompatible standards of conduct for Honda;

b.    the prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.    Honda has acted or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to the members of the proposed classes as a whole.

## FIRST CAUSE OF ACTION
### (Violation of the Consumers Legal Remedies Act,
### Cal. Civ. Code. § 1750 *et seq.*)

39.    Plaintiff, on behalf of himself and the nationwide class, realleges each and every allegation set forth above.

40.    Honda is a "person" within the meaning of Civil Code §§ 1761(c) and 1770, and has provided "goods" within the meaning of California Civil Code §§ 1761(b) and 1770.

41.    Plaintiff and members of the class are "consumers" within the meaning of Civil Code § 1761(d) and 1770, and have engaged in a "transaction" within the meaning of Civil Code § 1761(e) and 1770.

CLASS ACTION COMPLAINT

42.     Honda's acts and practices, undertaken in transactions intended to result and which did result in the sale of Class Vehicles, violate § 1770 of the  Consumers Legal Remedies Act in that:

a.     Honda represents that its goods have sponsorship, approval, characteristics, uses or benefits which they do not have;

b.     Honda advertises its goods with intent not to sell them as advertised;

c.     Honda represents that a transaction confers or involves rights, remedies, or obligations which it does not have or involve; and

d.     Honda represents that its goods have been supplied in accordance with a previous representation when they have not.

43.     Honda has violated the Consumers Legal Remedies Act by failing to disclose, at the point of sale or otherwise, that Class Vehicles have defective transmissions and pose a safety hazard due to the substantial risk of a vehicle collision resulting from vehicle hesitation and the transmission behavior that resembles slipping into neutral.

44.     Had Honda adequately disclosed information about the defective transmission, Plaintiff, members of the proposed class, and reasonable consumers would not have purchased or would have paid less for Class Vehicles.

45.     Pursuant to the provision of California Civil Code § 1780, Plaintiff seeks an order enjoining Honda from the unlawful practices described above, a declaration that Honda's conduct violates the Consumers Legal Remedies Act, and attorneys' fees and costs of litigation.

46.     Plaintiff, on behalf of himself and the proposed nationwide class, notified Honda in writing of the CLRA violations and requested that Honda cure the violations, but Honda has chosen not to do so.

CLASS ACTION COMPLAINT

## SECOND CAUSE OF ACTION

**(For unlawful, unfair, and fraudulent business practices under**

**Cal. Business and Professions Code § 17200 *et seq*.)**

47.  Plaintiff, on behalf of himself and the proposed nationwide class, realleges each and every allegation set forth above.

48.  Honda's acts and practices, as alleged in this complaint, constitute unlawful, unfair and/or fraudulent business practices, in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.

49.  The business practices engaged in by Honda that violate the Unfair Competition Law include failing to disclose, at the point of sale or otherwise, that the transmissions installed in Class Vehicles are defective and pose a safety hazard.

50.  Honda engaged in unlawful business practices by violating the Consumers Legal Remedies Act, Civil Code §§ 1750 *et seq*.

51.  Honda engaged in unfair business practices by, among other things:

    a.  Engaging in conduct where the gravity of the consequences to Plaintiff and proposed class members outweighs the utility of that conduct;

    b.  Engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and proposed class members; and

    c.  Engaging in conduct that undermines or violates the stated policies underlying the CLRA, which seeks to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

52.  Honda engaged in fraudulent business practices by engaging in conduct that was and is likely to deceive a reasonable consumer.

53.  As a direct and proximate result of Honda's unlawful, unfair and fraudulent business practices as alleged herein, Plaintiff and the proposed class members have

14

suffered injury in fact and lost money or property, in that they purchased vehicles they otherwise would not have, paid more the vehicles than they otherwise would have, paid for vehicle repairs to resolve the defect, and are left with vehicles of diminished value because of the defect.  Meanwhile, Honda has sold more Class Vehicles than it otherwise could have and charged inflated prices, unjustly enriching itself.

54.      Plaintiff and proposed class members are entitled to equitable relief, including restitutionary disgorgement of all profits accruing to Honda because of its unlawful, unfair, fraudulent, and deceptive practices, attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Honda from its unlawful, unfair, fraudulent and deceitful activity.

## THIRD CAUSE OF ACTION

### (Violation of the Oregon Unlawful Trade Practices Act,

### Or. Rev. Stat. § 646.605, *et seq.*)

55.    Plaintiff Kornfein, on behalf of himself and the proposed Oregon class, realleges each and every allegation set forth above.

56.    Plaintiff Kornfein purchased his 2015 Acura TLX for "personal, family, or household purposes" within the meaning of Or. Rev. Stat. § 646.605.

57.    Honda violated the Oregon Unlawful Trade Practices Act (UTPA) sections 646.608(e), (g), (i), and (t), and 646.607(1) by engaging in unlawful practices in connection with transactions—namely, the sale of Class Vehicles to Plaintiff and the proposed Oregon class—that were intended to result and did result in the sale and lease of goods to consumers.

58.    In connection with the sale of Class Vehicles to Plaintiff and proposed class members, Honda failed to disclose that the transmission in Class Vehicles is defective.

59.    Honda committed a willful violation within the meaning of Or. Rev. Stat. § 646.605(10) in that Honda knew or should have known that its conduct was a violation.

60.    As a direct and proximate result of Honda's conduct, Plaintiff Kornfein and

CLASS ACTION COMPLAINT

other members of the proposed class suffered an "ascertainable loss of money or property" within the meaning of Or. Rev. Stat. § 646.638(1) because they purchased products that was represented to have a feature of value but that did not actually have that feature and, therefore, were less valuable. Plaintiff Kornfein and proposed class members also paid more for Class Vehicles than they otherwise would have. Meanwhile, Honda has sold more Class Vehicles than it otherwise would have and charged inflated prices for Class Vehicles, unjustly enriching itself.

61. Pursuant to Or. Rev. Stat. § 646.638, Plaintiff Kornfein seeks actual and punitive damages and appropriate equitable and injunctive relief, including an order requiring Honda to adequately disclose and repair the transmission defect, and an order enjoining Honda from incorporating the defective transmission into its vehicles in the future, as well as attorney fees and costs.

## FOURTH CAUSE OF ACTION

### (Violation of Magnuson-Moss Warranty Act,
### 15 U.S.C. § 2301, *et seq.*)

62. Plaintiff Kornfein, on behalf of himself and the proposed nationwide class, realleges each and every allegation set forth above.

63. Plaintiff Kornfein and the proposed class members are "consumers" within the meaning of 15 U.S.C. § 2301(3).

64. Honda is a "supplier" and "warrantor" within the meaning of §§ 2301(4)-(5).

65. Class Vehicles are "consumer products" within the meaning of § 2301(1).

66. Honda's express warranty is a "written warranty" within the meaning of § 2301(6).

67. Honda breached the express warranty by:

  a. Extending a 4 year/50,000 mile New Vehicle Limited Warranty with the purchase or lease of Class Vehicles and warranting to "repair or replace any part defective in material or workmanship" at no cost to

the owner or lessee;

b.    Selling and leasing Class Vehicles with transmissions that were defective in material or workmanship, requiring repair or replacement within the warranty period; and

c.    Refusing to honor the express warranty by repairing or replacing the transmission in Class Vehicles free of charge.

68.    Honda's breach of express warranty has deprived Plaintiff Kornfein and other proposed class members of the benefit of their bargain.

69.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum value of $25.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

70.    Honda has been afforded a reasonable opportunity to cure its breach of written warranty, including when Plaintiff brought his vehicle in for diagnosis of its transmission defect, when Plaintiff repeatedly contacted Acura Client Services, and when Plaintiff sent Honda a pre-litigation demand by mail.

71.    As a direct and proximate cause of Honda's breach of written warranty, Plaintiff and the proposed class members sustained damages and other losses in an amount to be determined at trial.

72.    Plaintiff and the proposed class members are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and other appropriate relief.

## FIFTH CAUSE OF ACTION

### (Breach of Express Warranty,

### Or. Rev. Stat. § 72.7140, *et seq.*)

73.    Plaintiff Kornfein, on behalf of himself and the proposed Oregon class, realleges each and every allegation set forth above.

74.    Honda provided all purchasers and lessees of Class Vehicles with the

express warranty described above, which became part of the basis of the bargain.  As a result, this is an express warranty under Oregon law.

75. The defective transmission and its component parts were manufactured and/or installed by Honda in Class Vehicles and are covered by the express warranty.

76. Honda breached the express warranty by:

a. Extending a 4 year/50,000 mile New Vehicle Limited Warranty with the purchase or lease of Class Vehicles and warranting to "repair or replace any part defective in material or workmanship" at no cost to the owner or lessee;

b. Selling and leasing Class Vehicles with transmissions that were defective in material or workmanship, requiring repair or replacement within the warranty period; and

c. Refusing to honor the express warranty by repairing or replacing the transmission in Class Vehicles free of charge.

77. Honda's breach of express warranty has deprived Plaintiff Kornfein and other proposed class members of the benefit of their bargain.

78. Honda has been afforded a reasonable opportunity to cure its breach of written warranty, including when Plaintiff brought his vehicle in for diagnosis of its transmission defect, when Plaintiff repeatedly contacted Acura Client Services, and when Plaintiff sent Honda a pre-litigation demand by mail.

79. As a direct and proximate cause of Honda's breach of written warranty, Plaintiff and the proposed class members sustained damages and other losses in an amount to be determined at trial.

80. Plaintiff and the proposed class members are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and other appropriate.

**SIXTH CAUSE OF ACTION**

**(Breach of Implied Warranty,**

**Or. Rev. Stat. § 72.8010, *et seq.*)**

81.     Plaintiff Kornfein, on behalf of himself and the proposed Oregon class, realleges each and every allegation set forth above.

82.     Class Vehicles qualify as "consumer good[s]" within the meaning of Or. Rev. Stat. § 72.8010(1).

83.     Honda is the "manufacturer" of Class Vehicles within the meaning of Or. Rev. Stat. § 72.8010(3).

84.     As a result, Honda has given an implied warranty of merchantability to all purchasers and lessees of Class Vehicles, as described by Or. Rev. Stat. § 72.8020.

85.     The defective transmission and its component parts were manufactured and/or installed by Honda in Class Vehicles and are covered by the implied warranty.

86.     Honda breached the implied warranty by selling and leasing Class Vehicles that are not fit for the ordinary purpose for which such vehicles are used.

87.     Honda's breach of the implied warranty has deprived Plaintiff Kornfein and other proposed class members of the benefit of their bargain.

88.     As a direct and proximate cause of Honda's breach of the implied warranty, Plaintiff and the proposed class members sustained damages and other losses in an amount to be determined at trial.

89.     Plaintiff and the proposed class members are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and other appropriate.

**PRAYER FOR RELIEF**

Plaintiff prays for judgment as follows:

a.     For an order certifying the proposed class and appointing Plaintiff and their counsel to represent the class;

b.     For an order awarding Plaintiff and members of the class:

       i.        Damages, consequential damages, specific performance, and/or rescission;

      ii.        Restitution, or other equitable relief as the Court deems proper;

     iii.        Pre-judgment and post-judgment interest; and

     iv.        Reasonable attorneys' fees and costs of suit, including expert witness fees.

c.      For an order enjoining Honda from continuing to engage in unlawful business practices as alleged above; and

d.      For an order awarding such other and further relief as this Court may deem proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims so triable.

DATED: February 23, 2015           Respectfully submitted,

**GIBBS LAW GROUP LLP**

By:        /s/ Eric Gibbs

        Eric Gibbs

Dylan Hughes
Steve Lopez
One Kaiser Plaza, Suite 1125
Oakland, California 94612
Telephone:   (510) 350-9700
Facsimile:   (510) 350-9701

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT